Upon review of the competent evidence of record with reference to the errors assigned, and finding no good grounds to receive further evidence or to rehear the parties or their representatives, the Full Commission affirms and adopts the Opinion and Award of the Deputy Commissioner with some modifications.
***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. The parties are bound by and subject to the North Carolina Workers Compensation Act.
2. At all relevant times, an employment relationship existed between plaintiff and defendant-employer.
3. Travelers/Aetna is the carrier on the risk.
4. Plaintiff average weekly wage was $421.00.
5. Plaintiff suffered a compensable injury by accident to his right hand on 31 July 1996.
6. Defendants paid compensation to plaintiff pursuant to N.C. Gen. Stat. 97-18(b).
7. North Carolina Industrial Commission Form 18 was stipulated into evidence as Stipulated Exhibit 1.
8. A letter from plaintiffs counsel and attachments consisting of eight pages were submitted into evidence as Stipulated Exhibit 2.
9. Payroll stubs from 23 March 1998 through 19 October 1998 were submitted into evidence as Stipulated Exhibit 2A.
10. An Industrial Commission Form 25R was stipulated into evidence as Stipulated Exhibit 3.
11. An Industrial Commission Form 60 was stipulated into evidence as Stipulated Exhibit 4.
12. Documentation from Duke University Medical Center was stipulated into evidence as Stipulated Exhibit 10.
13. Documentation from Duke University Medical Center was stipulated into evidence as Stipulated Exhibit 11.
14. Documentation from Duke University Medical Center was stipulated into evidence as Stipulated Exhibit 12.
15. Documentation from Duke University Medical Center and Richard D. Goldner, M.D., was stipulated into evidence as Stipulated Exhibit 13.
16. Documentation from Duke University Medical Center, Division of Neurology, was stipulated into evidence as Stipulated Exhibit 14.
17. Documentation from Raleigh Hand Center was stipulated into evidence as Stipulated Exhibit 15.
18. Plaintiff was out of work from 1 August 1996 through 1 November 1997. Plaintiff returned to work for a different employer on 1 November 1997, at wages reflected in Stipulated Exhibit 2.
***********
 EVIDENTIARY RULINGS
The objections raised in the deposition of Richard D. Goldner, M.D., are OVERRULED.
***********
Based upon all the competent evidence adduced at the hearing and the reasonable inferences therefrom, the Full Commission makes the following additional:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was 26 years old and had been employed for approximately four months in 1996 at defendant-employers meat processing facility. Plaintiff worked in sanitation for defendant-employer.
2. On 31 July 1996, plaintiff was cleaning the casing air lock machine when he tried to catch a cloth which was falling into the machine. The machine had been left running and plaintiffs right hand and forearm were caught inside the machine. Plaintiffs right hand was crushed, and the muscles, nerves and blood vessels were pulled from the forearm. Plaintiffs four fingers on his right hand were amputated at various levels. Plaintiff sustained an open fracture of his ulna.
3. Plaintiff was initially treated at Sampson Regional Medical Center and later at Duke University Medical Center.
4. On 31 July 1996 and 3 August 1996, Richard Goldner, M.D., surgically repaired plaintiffs right hand. Dr. Goldner testified that at the time of plaintiffs surgery it was evident that his injury was not an isolated injury to the fingers or to the hand, but "was also significantly involved farther up the arm.
5. Plaintiff underwent physical therapy at Duke Medical Center for approximately three months in order to increase the function and mobility of his thumb, wrist, and forearm.
6. On 12 November 1996, Dr. Goldner ordered a nerve conduction study to determine the extent of damage of the nerves in plaintiffs arm. The nerve conduction study showed evidence of denervation to the muscles in the hand, the forearm, two muscles in the upper arm, the biceps and the brachialis muscle.
7. On 12 November 1996, Dr. Goldner indicated plaintiff could return to work in a position that would not require use of his upper right extremity.
8. After the November evaluation, plaintiff returned to Dr. Goldner on several occasions indicating that he was continuing to experience significant pain and swelling.
9. On 7 February 1997, Dr. Goldner was provided a job description for light duty, in the red offal product handler position, available with defendant-employer.
10. On 5 March 1997, Dr. Goldner approved this position as being within plaintiffs capabilities. However, in his 14 April 1997 medical notes, Dr. Goldner discussed plaintiffs emotional problems associated with working in the red offal product handler job. He suggested that plaintiff either needed psychiatric or psychological treatment to help him become desensitized to these machines or assignment to a job where he would not have to work around the machines.
11. Plaintiff justifiably refused this position. Plaintiff had experienced significant damage to his right hand and arm as a result of his injury and was reasonably apprehensive about returning to work for defendant-employer in a job which required him to work around the machine noise and in proximity to the area where he was injured. Plaintiff was still having problems with flashbacks and in dealing with the emotional aspects of his injury. The position plaintiff was to be assigned required him to drop pig livers into chutes and plaintiff was also justifiably apprehensive that he might reinjure himself with the machinery.
12. Plaintiff was terminated by defendant-employer when he did not return to the red offal product handler position.
13. Plaintiff was out of work from 1 August 1996 through 1 November 1997. On or about 2 November 1997, plaintiff was employed by J K Farms; however, plaintiff was unable to perform the job and stopped working after about 3 weeks because of the pain in his hand. Plaintiff obtained work through Action Temporaries in December 1997. His wages varied according to the hours he worked.
14. Plaintiff was subsequently employed as a full time employee by Butterball Turkey in Wallace, North Carolina, and began working approximately 40 hours per week on or about 30 March 1998. Plaintiff was employed in a maintenance position.
15. Plaintiff has continued to experience swelling and pain in his hand since 1997.
16. Plaintiffs average weekly wage while working for defendant-employer was $421.00, yielding a weekly compensation of $280.68. Plaintiff received temporary total disability compensation at a rate of $280.68 from 8 August 1996 until 1 November 1997. Defendant also paid plaintiff compensation from 2 November 1997 through 18 February 1998. Defendant is entitled to a credit for any overpayment of compensation during this period.
17. Plaintiff began work for Butterball Turkey at a reduced wage and has continued to receive wages less than those of his pre-injury wages.
18. Dr. Goldner examined plaintiff on 30 June 1997. Plaintiffs right shoulder motion was full, and his elbow flexed and extended fully. Plaintiff had limitation of motion in his fingers, and while his grip and pinch strength had improved, he still had forearm weakness. Dr. Goldner recommended that plaintiff continue working on strengthening his forearm and that he work with vocational rehabilitation to locate suitable job placement.
19. Dr. Goldners medical records do not show that he rated plaintiff on 30 June 1997, but his deposition testimony and his 30 March 1998 medical note indicate that he assigned a permanent partial disability rating of 80% to plaintiffs right arm based upon the 30 June 1997 examination. Dr. Goldner used the AMA rating guidelines and based his findings on plaintiffs finger amputation, finger and wrist motion, weakness of the upper extremity, and cold intolerance.
20. Dr. Goldner did not see plaintiff again until 30 March 1998. At that time, Dr. Goldner noted plaintiffs range of motion was improving in some areas and declining in others. His wrist motion declined, and his finger motions were approximately the same. Electric studies revealed that plaintiffs right bicep muscle was not functioning normally, and his elbow flexion was slightly below normal, for which Dr. Goldner assigned a rating of 4% permanent partial disability of the upper right arm. Dr. Goldner re-evaluated plaintiffs rating based on the findings of 30 June 1997, and the 30 March 1998 examination, and concluded that the improvement in some areas was balanced by the decline in other areas and the overall rating to plaintiffs right arm would be the same.
21. The Full Commission finds that plaintiff reached maximum medical improvement on 30 March 1998, at the time of plaintiffs last evaluation by Dr. Goldner.
22. On 5 May 1999, plaintiff was seen for an independent medical examination by George Edwards, III, M.D. Dr. Edwards assigned plaintiff a permanent partial disability rating of 73% to his right hand. Dr. Edwards based his rating on the North Carolina Industrial Commission Rating Guide, which does not take into account weakness and cold intolerance.
23. The American Medical Association guidelines used by Dr. Goldner to establish plaintiffs rating more accurately reflect plaintiffs impairment; therefore Dr. Goldners rating is given greater weight than the rating based upon the North Carolina Industrial Commission Rating Guide. Based upon the extensive damage to plaintiffs right hand and arm, plaintiff is entitled to an 80% permanent partial disability to his arm.
24. Plaintiff requires use of a prosthesis which will require periodical replacement over time.
25. The Full Commission viewed the damage and disfigurement to plaintiffs right hand and arm. The description given by Deputy Commissioner Jones in the transcript [pp. 8-10] adequately describes plaintiffs injuries.
26. Defendants have not defended this case without merit.
***********
Based upon the foregoing stipulations and findings of fact, the Full Commission enters the following:
 CONCLUSIONS OF LAW
1. On 31 July 1996, plaintiff suffered a compensable injury to his right hand and arm arising out of and in the scope of his employment with defendant-employer. N.C. Gen. Stat. 97-2(6).
2. As a result of his compensable injury on 31 July 1996, plaintiff received temporary total disability compensation from 8 August 1996 until 1 November 1997 at a weekly rate of $280.68. This period of disability is not in dispute. Plaintiffs disability after he returned to work for a different employer on or about 2 November 1997 is in dispute. N.C. Gen. Stat. 97-29.
3. Plaintiff is entitled to temporary partial disability compensation for the period that he was employed by subsequent employers including J 
K Farms and Butterball Turkey at a reduced wage during his healing period between 2 November 1997 through 30 March 1998 when plaintiff reached maximum medical improvement. He is entitled to temporary partial disability compensation at the weekly rate of 2/3 the difference between his pre-injury average weekly wage and his weekly earnings at the above employments. However, plaintiffs receipt of partial disability compensation during the healing period does not constitute an election of benefits. N.C. Gen. Stat. 97-30.
4. After reaching maximum medical improvement on 30 March 1998, plaintiff was entitled to elect benefits under N.C. Gen. Stat. 97-30 or97-31. Plaintiff is entitled to be compensated for the 80% permanent partial disability rating to his arm, in the amount of $53,890.56 ($280.68 x 192 weeks) which is the more favorable remedy. N.C. Gen. Stat. 97-31(13).
5. Defendant is entitled to a credit for any overpayment of compensation made to plaintiff from 2 November 1997 through 18 February 1998. N.C. Gen. Stat. 97-42.
6. Plaintiff is entitled to medical treatment which would effectuate a cure, give relief or lessen plaintiffs period of disability, including future medical treatment and periodic replacement of his prosthesis. N.C. Gen. Stat. 97-25.
***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendant shall pay to plaintiff temporary partial disability compensation from 2 November 1997 through 30 March 1998 at the rate of 2/3 of the difference between his preinjury average weekly wage and the weekly wage he was able to earn through 30 March 1998 when he reached maximum medical improvement. Said amount shall be paid in lump sum, subject to an attorneys fee approved in Paragraph 4 and any credit defendant might be due for an overpayment of compensation to plaintiff during the period from 2 November 1997 to 18 February 1998.
2. Plaintiff is entitled to compensation at the rate of $280.68 per week for 192 weeks for an 80% permanent partial disability rating for his right arm, in the amount of $53,890.56. Said amount shall be paid in a lump sum, subject to an attorneys fee approved in Paragraph 4.
3. Defendants shall pay all medical expenses resulting from plaintiffs compensable injury to his right hand and right arm arising from his injury by accident on 31 July 1996. This shall include periodic replacement of his prosthesis.
4. A reasonable attorneys fee of 25% of the compensation due plaintiff under Paragraphs 1 and 2 of this AWARD is approved for plaintiffs counsel and shall be paid as follows: 25% of the lump sum due plaintiff under Paragraphs 1 and 2 of this AWARD shall be deducted from that sum and paid directly to plaintiffs counsel.
5. Defendants shall pay the costs.
This the ___ day of September, 2000.
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
S/_______________ RENÉE C. RIGGSBEE COMMISSIONER
S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER